Fernandez v Sukhdeep (2026 NY Slip Op 00422)

Fernandez v Sukhdeep

2026 NY Slip Op 00422

Decided on January 29, 2026

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: January 29, 2026

Before: Webber, J.P., Mendez, Pitt-Burke, Higgitt, O'Neill Levy, JJ. 

Index No. 160132/21|Appeal No. 4856|Case No. 2024-07129|

[*1]Randy Fernandez, Plaintiff-Respondent, Jose Peralta, Plaintiff,
vSingh Sohal Sukhdeep et al., Defendants-Appellants.

Lifflander & Reich LLP, New York (Kent B. Dolan of counsel), for appellants.
The Altman Law Firm PLLC, Woodmere (Michael T. Altman of counsel), for respondent.

Order, Supreme Court, New York County (James G. Clynes, J.), entered November 14, 2024, which, to the extent appealed from as limited by the briefs, denied defendants' motion for summary judgment dismissing plaintiff Randy Fernandez's complaint for lack of a serious injury within the meaning of Insurance Law § 5102(d), reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment accordingly.
Plaintiff claims to have injured his left shoulder and the cervical and lumbar aspects of his spine in a December 12, 2020 motor vehicle accident (2020 accident). He claims to have sustained a "serious injury," as defined in Insurance Law § 5102(d), under the categories of permanent loss of use, significant limitation, permanent consequential limitation, and a "medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment" (90/180).
Defendants moved for summary judgment, arguing that plaintiff's injuries were not caused by the 2020 accident and were not serious. In support of the motion defendants submitted the affirmations of neurologist Dr. John Kenneth Houten and orthopedist Dr. Andrew N. Bazos, both of whom reviewed plaintiff's medical records and examined plaintiff.
Defendants' proof was sufficient to establish prima facie that plaintiff's cervical and lumbar injuries were the product of degeneration and not causally related to the subject accident (see Massillon v Regalado, 176 AD3d 600, 600-601 [1st Dept 2019]; Santos v UM Cab Corp., 176 AD3d 630, 630 [1st Dept 2019]). Defendants further demonstrated a lack of causal connection between the 2020 accident and plaintiff's claimed cervical and lumbar injuries in light of prior injuries to the same body parts sustained in a 2013 motor vehicle accident (2013 accident) (see Brewster v FTM Servo, Corp., 44 AD3d 351, 352 [1st Dept 2007]; see also Bobbio v Amboy Bus Co. Inc., 143 AD3d 655, 656 [1st Dept 2016]).
Drs. Houten and Bazos compared the MRIs of plaintiff's cervical and lumbar spine taken immediately after the 2013 accident with those taken after the 2020 accident, both finding that the 2021 studies merely showed normal progression of conditions that were already at least partially degenerative in 2013. With respect to plaintiff's cervical spine, the 2013 report depicted a bulge at C5/6 compressing the thecal sac. Dr. Houten found that the images from the 2013 study showed straightening of the lordosis with multilevel degenerative changes with loss of hydration most evident at C5/6, without canal compromise, and that the 2021 study showed mild degenerative changes with no neural compression in the canal or foramina at C5/6. With respect to plaintiff's lumbar spine, the 2013 report depicted a bulge at L3/4 with impingement on the neural foramina. Dr. Houten found that the images from the 2013 study showed normal alignment and lordosis with minimal degenerative changes at L3/4 and without impingement to any neural element, while the 2021 study showed a bulge at L3/4 without any description of neural compression.[FN1]
Plaintiff's own medical records were sufficiently persuasive to shift the burden to plaintiff on the issue of causation (see Chintam v Fenelus, 65 AD3d 946, 947 [1st Dept 2009]). Plaintiff was required to, and failed to, explain why the 2020 accident, and not the preexisting conditions depicted in plaintiff's own records, was the cause of his cervical and lumbar spine symptoms and limitations (see Grate v Rodrigues, 179 AD3d 440, 441 [1st Dept 2020]; Deneen v Bucknor, 178 AD3d 461, 462 [1st Dept 2019]; Williams v Laura Livery Corp., 176 AD3d 557, 558 [1st Dept 2019]; Diakite v PSAJA Corp., 173 AD3d 535, 536 [1st Dept 2019]; cf. Jenkins v Livo Car Inc., 176 AD3d 568, 569 [1st Dept 2019]). The sole evidence offered in opposition on this point was plaintiff's own subjective belief, reflected in various reports, that he had recovered from the prior accident, which is not competent evidence sufficient to raise an issue of fact (see Dorrian v Cantalicio, 101 AD3d 578, 579 [1st Dept 2012]; Chintam, 65 AD3d at 947). Further, his physicians' conclusory opinions as to a causal relationship, made without any acknowledgement of the prior accident or review of the records from that accident, were insufficient to raise an issue of fact (see Santos, 176 AD3d at 631; Moctezuma v Garcia, 176 AD3d 578, 578-579 [1st Dept 2019]; Thompson v Bronx Merchant Funding Servs., LLC, 166 AD3d 542, 544 [1st Dept 2018]).
Whether an injury is "serious" within the meaning of Insurance Law § 5102(d) is an inquiry distinct from whether the injury was caused by the accident (see e.g. Lindo v Brett, 149 AD3d 459, 462-463 [1st Dept 2017]), and a defendant need not establish a lack of one to establish, prima facie, a lack of the other. Either is sufficient to meet defendants' prima facie burden, and dictates the showing a plaintiff must make to raise an issue of fact. Accordingly, plaintiff's doctor's findings of spinal range of motion deficits were irrelevant to the issue of causation, and did not raise an issue of fact.
With respect to plaintiff's shoulder injury, Dr. Bazos's normal physical examination of plaintiff was sufficient to establish prima facie that the injury was not "serious" and that plaintiff did not sustain a permanent consequential or significant limitation of use of his left shoulder as a result of the accident (see Hamilton v Marom, 178 AD3d 424, 425 [1st Dept 2019]; Cano v U-Haul Co. of Ariz., 178 AD3d 409, 409 [1st Dept 2019]). That Dr. Bazos found a minor deficit in one plane of motion did not defeat defendants' prima facie showing; the ranges of motion were identical to plaintiff's uninjured right shoulder, and Dr. Bazos found that both exhibited normal function (see Cardwood v R&F Limousine Inc., 224 AD3d 403, 403 [1st Dept 2024]; Blumenberg v Lora, 193 AD3d 445, 445 [1st Dept 2021]).
Further, while Dr. Bazos's opinion that plaintiff's shoulder injury was not caused by the 2020 accident was based on his erroneous assertions that the diagnostic imaging in the record pre-dated the accident (the date on the report was ambiguous), and that plaintiff had not complained about his shoulder at his initial medical encounter, defendants nevertheless also demonstrated that plaintiff's cessation of treatment, after a brief course, severed the causal connection between the accident and the claimed injuries and required explanation (see Pommells v Perez, 4 NY3d 566, 574 [2005] ["a plaintiff who terminates therapeutic measures following the accident, while claiming 'serious injury,' must offer some reasonable explanation for having done so"]).
Plaintiff failed to sufficiently explain the cessation of treatment to warrant denial of defendants' motion (see Pastora L. v Diallo, 167 AD3d 424, 425 [1st Dept 2018]). Plaintiff saw Dr. Aleksandr Khaimov a total of four times after the accident during the four-month period from February 2021 to June 2021. Dr. Khaimov next examined plaintiff only in response to defendants' motion, nearly three years later. He opined that his review of plaintiff's records indicated that plaintiff had achieved maximum benefits from surgery and physical therapy. This opinion, however, is contradicted by the same records, which consistently recommended continued treatment, and plaintiff's pain management physician, who also recommended continued physical therapy. Plaintiff, therefore, failed to adequately explain why treatment ceased within six months after the accident (see Pommells, 4 NY3d at 574). While the dissent is correct that in motion practice, defendants did not raise the issue of a gap in treatment until their reply papers, defendants raised the issue in their opening brief on appeal. Plaintiff did not object, instead responding substantively, rendering the issue properly before us (see Misicki v Caradonna, 12 NY3d 511, 519 [2009] ["We are not in the business of blindsiding litigants, who expect us to decide their appeals on rationales advanced by the parties, not arguments their adversaries never made"]). In this circumstance, we are not straining to reach an issue where the parties themselves have not seen fit to address it, and we leave the parties to the litigation course they have charted.
In view of the foregoing demonstrating the lack of a causally related serious injury, plaintiff's 90/180-day claim also should be dismissed (see Tarjavaara v Considine, 188 AD3d 509, 510 [1st Dept 2020]).
All concur except Mendez, J. who dissents in a memorandum as follows:

MENDEZ, J. (dissenting)

On December 12, 2020, at approximately 10:00pm, while plaintiff Randy Fernandez was seated in the driver's seat of a double-parked 2002 Toyota Camry motor vehicle (owned by plaintiff Jose Peralta) on West 184th Street in Manhattan, the vehicle was impacted by the cab section of a Mack truck, owned by defendant JJS Transportation & Distribution, Inc., and driven by defendant Singh Sohal Sukhdeep, as it attempted to pass plaintiff's vehicle on the driver's side. Plaintiff alleges that his vehicle was dragged by defendants' truck, causing a second heavy impact. The truck then stopped, went into reverse, and detached itself from his vehicle.
As a result of these two heavy impacts, plaintiff alleges that his left shoulder struck the door near the lock, his head and neck struck the driver's side window and seat, and his back struck the seat, causing serious injuries to his left shoulder and to his cervical and lumbar spine. At the scene, plaintiff observed the driver's side door and fender of his vehicle were pushed in, and there were scratches running from the door to the front bumper. Defendant driver stated at his deposition that he thought the car only sustained scratches that were made by his vehicle's bolt covers, which was something the parties could resolve without police assistance; therefore, neither an ambulance nor the police were called to the scene. He did not notify his employer about the accident until after this action was commenced.
This personal injury action was commenced on November 8, 2021. Plaintiff's verified bill of particulars claims injuries to plaintiff's left shoulder, and to his cervical and lumbar spine, as well as "exacerbation of any previously existing injuries or conditions." At his deposition on December 15, 2021, plaintiff testified that immediately after the accident, he had a pounding headache, neck, back, and left shoulder pain, but did not request medical attention because at the accident scene he was "still in shock." Over time the pain worsened. He had migraines, increased neck and back pain, he felt numbness in his arms and feet, numbness in his fingers and shooting pain in his arms that felt like "electricity" shooting down his arms and legs. His left shoulder became so painful it prevented him from lifting his arm. Plaintiff sought medical attention to address the pain to the affected areas. Plaintiff was unemployed on the date of the accident, he did not leave his bed for the first two weeks after the accident, and did not leave home other than for doctor visits or to pick up his daughter from school once or twice a week, for the first two to three months. For over a year after the accident he had physical therapy at least three times a week, as well as chiropractic treatments and acupuncture.
Plaintiff testified that he had a prior accident on May 19, 2013 (2013 accident), where he injured his neck and back, but these injuries were fully resolved after six months of physical therapy. He stated that there were no symptoms in his neck and back prior to the December 12, 2020 accident (2020 accident) and he had never injured the left shoulder. Plaintiff provided certified medical records from his medical providers to demonstrate that he had consistent complaints of pain immediately after the accident and was consistently treated from January 20, 2021, the date he first received chiropractic care, through September 2022.
On January 20, 2021, the chiropractor referred plaintiff to Mark Kovalevskiy, M.D., who he visited on January 21, 2021. He complained of headaches, as well as neck, back, and left shoulder pain. Dr. Kovalevskiy measured plaintiff's range of motion (ROM) and documented restrictions in all planes of the left shoulder and the cervical and lumbar spine. He recommended that plaintiff undergo physical therapy, chiropractic treatment, and acupuncture. Plaintiff testified that he saw Dr. Kovalevskiy at least once a month from January 21, 2021, through October of 2021.
An MRI report of plaintiff's left shoulder, dated February 11, 2021, identified:
"a partial tear of the distal supraspinatus tendon [rotator cuff], hypertrophic changes of the acromioclavicular joint with impingement of the rotator cuff; productive hypertrophic changes of the acromioclavicular [AC] joint with impingement of the rotator cuff; edema in the distal clavicle and adjacent acromion with fluid in the AC joint consistent with recent trauma; fluid in the long head of the biceps tendon sheath consistent with tenosynovitis; and mild joint effusion consistent with recent trauma or synovitis" (emphasis added).
On February 21, 2021, plaintiff was seen by Aleksandr Khaimov, D.O., an orthopedic surgeon, who, on March 11, 2021, performed a left shoulder arthroscopy, rotator cuff and labral debridement, rotator cuff tenotomy, lysis of adhesions, and a synovectomy. Dr. Khaimov postoperatively diagnosed plaintiff with "partial rotator cuff tear; partial labral tear; adhesions; and synovitis of the left shoulder."
MRIs were taken of plaintiff's cervical and lumbar spine on March 24, 2021. The impression for the cervical spine was "C5/C6 disc bulge which impinges upon the thecal sac; ventral and dorsal marginal osteophytes at C5/C6 and straightening of the cervical spine." The MRI of the lumbar spine showed a disc bulge at L3-L4.
Plaintiff sought pain treatment with specialist, Boleslav Kosharskyy, M.D., from August 12, 2021 through early September 2022. At his initial visit, Dr. Kosharskyy noted plaintiff's complaints of pain in his cervical and lumbar spine, tenderness, muscle spasms in the affected areas, and ROM limitations. He also noted complaints of left shoulder pain that was exacerbated by rotation and movement. Dr. Kosharskyy diagnosed a strain of the muscle, fascia, and tendon of the neck, performed extracorporeal shock wave treatment on plaintiff's neck, and recommended cervical and lumbar epidural steroid injections and trigger point injections for pain and muscle spasms, and continued physical therapy.
On August 11, 2022, Demetrios Koutsosypros, M.D., performed a C5-6 anterior percutaneous discectomy and a C5-6 discography. Dr. Koutsosypros's operative report states that surgery was "medically necessary" after a course of "failed conservative treatment." The operative report also documented continued complaints of severe neck pain, radiculopathy, severe functional limitation secondary to pain, and "symptoms and signs correlating to discogenic disc disease with radiculopathy."
At a postsurgical examination with Dr. Kosharskyy on August 15, 2022, it was noted that plaintiff still had neck pain radiating to both shoulders and the right upper extremity, with a sharp, deep pain and pressure around the neck. Plaintiff also had constant pain in his lower back and intermittent pain in his left shoulder. Dr. Kosharskyy diagnosed plaintiff with cervical and lumbar radiculopathy and disc displacement, as well as bicipital tendinitis of his left shoulder. He causally related these injuries to the 2020 accident.
Plaintiff submitted to medical examinations by defendants' expert orthopedic surgeon on May 4, 2023, and their expert spinal neurosurgeon on May 30, 2023. Both examinations took place about two and a half years after the accident, two years after plaintiff's shoulder surgery, and eight months after surgery to the cervical spine. Defendants' experts determined that plaintiff's alleged injuries from the 2020 accident are soft tissue in nature, preexisting from the 2013 accident, or degenerative.
After completion of discovery, defendants moved for summary judgment dismissing plaintiff's complaint in its entirety on the grounds that the medical evidence and their experts' reports establish that plaintiff did not sustain a serious injury pursuant to Insurance Law §§ 5102(d) and 5104(a). Plaintiff opposed the motion, arguing that defendants failed to meet their prima facie burden and that any assessment by defendants' experts of preexisting injuries was purely speculative, particularly as to the alleged shoulder injury. Alternatively, plaintiff argued that the opinions of his treating physicians and the medical records raised triable issues of fact.
Plaintiff submitted his certified medical records, the affirmation of Dr. Khaimov, the orthopedic surgeon that operated on his left shoulder, and the affirmed narrative report of Dr. Kosharskyy, his treating physician. Dr. Khaimov reexamined plaintiff on March 14, 2024, performed ROM testing, and found permanent and significant limitations to the left shoulder that he causally related to the 2020 accident. Dr. Kosharskyy examined plaintiff on March 11, 2024, and found permanent and significant ROM limitations to plaintiff's left shoulder and cervical and lumbar spine, and causally related these injuries to the 2020 accident.
Supreme Court denied defendants' motion; the majority would reverse. For the reasons stated below, I would affirm.
Insurance Law § 5104(a) limits recovery in personal injury actions for non-economic loss to serious physical injury (see Pommells v Perez, 4 NY3d 566, 571 [2005]). Plaintiff alleges that he sustained a serious physical injury as defined in Insurance Law § 5102(d) under the following categories: (a) permanent consequential limitation of use of a body organ or member; (b) significant limitation of use of a body function or system; and (c) a non-permanent medically determined injury or impairment preventing plaintiff from performing substantially all of his usual and customary daily activities for not less than 90 days during the 180 days following the accident.
To meet their prima facie burden on a motion for summary judgment dismissing a serious physical injury claim, defendants must show with competent evidence that plaintiff's injuries are not serious as defined by Insurance Law § 5102(d), or not causally related to the accident (see Spencer v Golden Eagle, Inc., 82 AD3d 589, 590 [1st Dept 2011]). Serious injury as pertains to both "permanent consequential limitation" and "significant limitation" require that defendants establish: (1) there is no objective medical evidence of injuries or abnormalities; (2) there are no medical findings of resulting limitations by either quantified ROM testing, or a qualitative assessment of limitations compared with normal function (Toure v Avis Rent a Car Sys., 98 NY2d 345, 350-351, 353 [2002]); or (3) lack of causation, e.g., a gap in treatment, an intervening medical problem, or a pre-existing condition (see Pommells, 4 NY3d at 572 [2005]; Toure v Avis Rent a Car Sys, 98 NY2d 345, 350-351, 353 [2002]).PLAINTIFF'S LEFT SHOULDER
Defendants failed to meet their prima facie burden for dismissal of plaintiff's claim of a left shoulder injury. Defendants' expert orthopedic surgeon, Dr. Andrew N. Bazos, conducted ROM testing of plaintiff's shoulders on May 4, 2023, more than two years after the surgery, using a goniometer, visual landmarks, and the American Medical Association (AMA) ROM guidelines to evaluate limitations. He opined that both shoulders had normal ROM across all planes. However, he measured plaintiff's shoulder abduction at 180 degrees, 10 degrees higher than the stated AMA guideline of 170; and stated that internal shoulder rotation was normal bilaterally at 50 degrees, which was 10 degrees lower than the stated AMA standard of 60. The conflicting results from the ROM testing belies the orthopedic expert's determination that plaintiff had "normal" ROM across all planes on both shoulders and is insufficient to meet defendants' prima facie burden (see Santos v New York City Tr. Auth., 99 AD3d 550, 550 [1st Dept 2012] [unexplained limitations conflict with finding of absence of serious injury]; Feaster v Boulabat, 77 AD3d 440, 440-441 [1st Dept 2010] [0pinion that plaintiff's injuries had resolved belied by ROM limitations]). Dr. Bazos found "positive subjective impingement" in the left shoulder and stated that plaintiff "winced dramatically." He does not explain how plaintiff's wince amounted to self-imposed or deliberate actions that altered the test results, particularly after plaintiff participated in ROM testing of both shoulders that Dr. Bazos found to be "normal" (see Bernardez v Babou, 83 AD3d 499, 499 [1st Dept 2011] [expert's subjective finding undermined by compliance with other tests and no self-imposed or deliberate actions by the plaintiff]; Torres v Knight, 63 AD3d 450, 451 [1st Dept 2009][expert's finding of the plaintiff's subjective responses require objective proof]) .
Dr. Bazos's opinion that a left shoulder injury required treatment within two weeks of the 2020 accident, and that an acute injury would result in severe pain and swelling that would cause plaintiff to seek immediate medical attention, is speculative and conclusory, and fails to identify any objective medical evidence to support this opinion (see McCree v Sam Trans Corp, 82 AD3d 601, 601 [1st Dept 2011] [expert opinion is conclusory if there is no factual basis for the opinion]; Frias v James, 69 AD3d 466, 466-467 [1st Dept 2010] [expert opinion is conclusory if there is no reference to medical records reviewed]). His expert opinion that the left shoulder surgery "only addressed long-standing findings which predated the subject accident by quite some time in their development" is also speculative and conclusory because there is no reference to medical records, MRI films, or any other objective evidence to support this assertion (see Glynn v Hopkins, 55 AD3d 498, 498 [1st Dept 2008][suggestion of cause of injury without evidence is too equivocal]). There is no proof that plaintiff injured his left shoulder before or within two months after the 2020 accident, or that he had a degenerative condition. Additionally, the February 11, 2021 MRI report described injury to the left shoulder as "consistent with recent trauma." This MRI finding was not challenged by Dr. Bazos after his review of the records.
Finally, Dr. Bazos did not address the findings by Dr. Kovalevskiy in his certified medical records. On January 21, 2021, Dr. Kovalyvskiy examined plaintiff who complained of pain to his left shoulder and cervical and lumbar spine. On that date he performed ROM testing and found limitations across all planes of plaintiff's left shoulder. Therefore, Dr. Bazos's opinion that there is no injury to the left shoulder is insufficient to meet defendants' burden (see Jeffers v Style Tr. Inc., 99 AD3d 576, 576-577 [1st Dept 2012]; Beazer v Webster, 70 AD3d 587 [1st Dept 2010]; Paterson v Rivera, 49 AD3d 337 [1st Dept 2008]).
Dr. John K. Houten, defendants' expert spinal neurosurgeon, examined plaintiff on May 30, 2023; however, he did not test the left shoulder, and does not provide an opinion as to the cause of plaintiff's left shoulder injury. Like Dr. Bazos, Dr. Houten ignored Dr. Kovalevskiy's medical records, which established that plaintiff had earlier treatment to his left shoulder and ROM limitations (see Beazer at 587; Paterson at 337). Therefore, as to the left shoulder injury, Dr. Houten's opinion is insufficient to meet defendants prima facie burden (see Pouchie v Pichardo, 173 AD3d 643, 643 [1st Dept 2019]; Bernardez v Babou, 83 AD3d 499 [1st Dept 2011] [prima facie burden not met when there is no opinion as to cause of injury]; Lamb v Rajinder, 51 AD3d 430, 430 [1st Dept 2008] [no prima facie burden met when there is no ROM or specifics of tests performed]).
Assuming defendants met their prima facie burden on the left shoulder injury, plaintiff raised issues of fact. He testified at his deposition that he had not injured his left shoulder prior to the 2020 accident. Dr. Kovalevskiy's certified medical records established that beginning with the January 21, 2021 visit, plaintiff had complaints of pain in his left shoulder and had ROM limitations. The MRI report from February 11, 2021, two months after the accident, revealed left shoulder injuries "consistent with recent trauma." The left shoulder surgery on March 11, 2021, three months after the accident, found a rotator cuff tear, partial labral tear, adhesions, and synovitis of the left shoulder. This relatively short period of time for treatment and surgery after the accident is sufficient to raise triable issues of fact as to causation (see e.g. Diaz v Vivar-Martinez, 192 AD3d 578, 579 [1st Dept 2021] [doctor's opinion that condition is causally related to the accident based on medical records, MRI shortly after the accident, and surgery three months after the accident sufficient to raise an issue of fact]; Liz v Munoz, 149 AD3d 646, 646-647 [1st Dept 2017] [tear observed during surgery and ROM limitations before and two years after surgery raise an issue of fact]; Calcano v Rodriguez, 103 AD3d 490, 490-491 [1st Dept 2013] [MRI showing post-traumatic left shoulder injury and surgeon identifying tear with his own eyes at surgery and causally relating the injury to the accident raises an issue of fact]).
Furthermore, Dr. Khaimov, plaintiff's orthopedic surgeon, who examined plaintiff on March 14, 2024 and performed the surgery on his left shoulder, causally relates plaintiff's left shoulder injury to the 2020 accident, and finds continuing limitations of ROM in flexion and abduction of the left shoulder more than three years post accident. Dr. Kosharskyy, plaintiff's pain treatment doctor who examined plaintiff on March 11, 2024, causally relates the left shoulder injury to the 2020 accident and, after performing ROM testing, finds continuing limitations across all planes of the left shoulder. Plaintiff's doctors' examinations, reports, and findings contradict the reports and findings of defendants' experts and raise issues of fact as to whether plaintiff sustained a permanent consequential and/or significant limitation to his left shoulder as a result of the 2020 accident (see Burgos v Diamond Bricks Inc., 231 AD3d 529, 531 [1st Dept 2024]; Hess v Fabrizi, 221 AD3d 406, 407 [1st Dept 2023]; Yuen v Arka Memory Cab Corp., 80 AD3d 481, 481-482 [1st Dept 2011]).CERVICAL AND LUMBAR SPINE
Defendants' experts opine that plaintiff had preexisting injuries from the 2013 accident that were only mildly exacerbated by the 2020 accident, but they failed to address plaintiff's claims in his verified bill of particulars that his preexisting injuries were exacerbated.
Dr. Bazos's cervical ROM testing revealed substantial limitations in plaintiff's ROM as compared to the AMA guidelines for normal ROM across all cervical planes. His test results found 45 degrees flexion (AMA 60 degrees normal); 45 degrees extension (AMA 75 degrees normal); 30 degrees left rotation (AMA 70 degrees normal); and 35-50 degrees right rotation (AMA 70 degrees normal). However, Dr. Bazos opines that plaintiff's cervical spine ROM is "completely normal." This contradictory result is insufficient to shift the burden of proof (see Santos, 99 AD3d at 550; Feaster, 77 AD3d at 440-441).
Dr. Bazos' report states that he found normal ROM in plaintiff's thoracolumbar spine (flexion at 90 degrees and extension at 30 degrees) consistent with the AMA standard, and found no paraspinal or midline bony tenderness. He opines, after review of the MRI film from the 2013 accident (when plaintiff was approximately 26 years old), the reports from both accidents, and the medical records, that plaintiff's cervical injuries were preexisting, degenerative, and the result of routine wear and tear, and were not related to the 2020 accident. This would be sufficient to meet the defendants' prima facie burden (see Vazquez v Almanzar, 107 AD3d 538, 539 [1st Dept 2013]). However, Dr. Bazos's report then concludes that plaintiff, "has made a complete recovery from his accident-related injuries" and was "able to perform all of his pre-accident activities within 4 to 6 weeks of the subject accident." These contradictory statements in Dr. Bazos's report undermine his finding of preexisting degenerative injuries (see Perez-Vargas v Aarron, 187 AD3d 485, 485-486 [1st Dept 2020]; Curet v Kuhlor 172 AD3d 634, 635 [1st Dept 2019]).
Dr. Bazos's opinion is also speculative and conclusory. He states that if plaintiff sustained "acute traumatic disc herniations" he would require immediate medical attention due to severe pain. However, plaintiff alleged only that he sustained bulges impinging on the thecal sac - specifically, a cervical disc bulge at C5-C6 and a lumbar disc bulge at L3-L4. Dr. Bazos does not specifically address these injuries; therefore, his opinion is insufficient to meet defendants' prima facie burden(see McCree, 80 AD3d at 601; Linton v Nawaz, 62 AD3d 434, 438-439 [1st Dept 2009], affd 14 NY3d 821 [2010]; Frias, 69 AD3d at 466-467).
Dr. Houten met defendants' prima facie burden as to causation related to plaintiff's alleged injury to his cervical and lumbar spine. He opines after review and comparison of the MRIs from the 2013 accident and the 2020 accident that there is no evidence of traumatic pathology, and minimal degenerative change without compression on the spinal cord or spinal nerves as to both the cervical and lumbar spine. He compares the MRI film from the May 19, 2013 accident with the March 24, 2021 preoperative MRI films of the cervical spine, and opines that there is "no impairment of the spinal cord or nerve roots that could have been remedied by surgery or justified an invasive surgical intervention." Dr. Houten further opines that depicted MRI changes to the cervical spine before surgery and to the lumbar spine after the 2020 accident are degenerative. These opinions are sufficient to meet defendants' prima facie burden for summary judgment as to the cervical and lumbar spine injuries (see Linton, 62 AD3d at 439; Yuen, 80 AD3d at 482).
However, plaintiff raised issues of fact in opposition. The certified medical records document a course of treatment for nearly two years, by various providers, due to plaintiff's complaints of pain after the 2020 accident and Dr. Kosharskyy's records, starting with the first treatment on August 12, 2021, causally relate plaintiff's injuries to the 2020 accident. Plaintiff's operative report from August 11, 2022, states that, after a substantial period of conservative treatment, the anterior cervical percutaneous discectomy to his C5-C6 cervical spine was necessary to relieve diffuse disc bulging upon the thecal sac at C5-C6. In his March 11, 2024 affirmed narrative report, Dr. Kosharskyy averred that he reviewed plaintiff's treatment records and the operative report, and opined that plaintiff was "asymptomatic prior to the m0tor vehicle accident of 12/12/2020" and "the accident on December 12, 2020, was the definitive cause of his injuries." Dr. Kosharskyy's report also refers to ROM testing performed approximately a year and a half post surgery and finds that there remain limitations in ROM across all planes in plaintiff's cervical spine due to pain, tenderness to palpation, and spasms. Accordingly, plaintiff has submitted competent evidence with certified post accident medical records, and Dr. Kosharskyy's opinion in his affirmed narrative report, to raise an issue of fact as to whether he sustained traumatically induced cervical spine injuries from the 2020 accident (see Blake v Cadet, 175 AD3d 1199, 1200 [1st Dept 2019]; Brown v Achy, 9 AD3d 30, 32-33 [1st Dept 2004]).
Although there was no surgery on the lumbar spine, plaintiff alleges that as a result of the 2020 accident, the posterior disc bulge at L3-L4 indented on the thecal sac with intervertebral disc displacement. His medical records document complaints of pain and treatment and indicate that he was a 33-year-old, relatively young man at the time of the accident. Dr. Kosharskyy states in his narrative report that plaintiff continues to have lumbar intervertebral disc displacement and limited ROM in all planes except for left lateral flexion and continues to experience pain and tenderness to palpation, and muscle spasms. Dr. Kosharkyy causally relates plaintiff's injuries "to a reasonable degree of medical certainty" to the 2020 accident.
To the extent Dr. Kosharskyy did not expressly address defendants' experts' opinions on causation related to the alleged injuries to the lumbar spine, cervical spine, and related surgery, "by attributing the injuries to a different, yet altogether equally plausible cause" - that is, the 2020 accident - he rejected defendants' experts' opinions, and his opinion was entitled to equal weight (Vaughan v Leon, 94 AD3d 646, 648-649 [1st Dept 2012]; Yuen, 80 AD3d at 482).GAP IN TREATMENT
Defendants did not raise the issue of a gap in treatment in their initial moving papers. They raised it for the first time in reply, therefore, that argument was waived (see Nwanji v City of New York, 190 AD3d 650, 651 [1st Dept 2021]; Massillon v Regalado, 176 AD3d 600, 601 [1st Dept 2019]). In any event, Dr. Khaimov provides an explanation for the gap in treatment when he states that plaintiff "achieved the maximum benefits" from treatment. Moreover, the gap in treatment between plaintiff's prior treatment and the most recent examinations by his treating doctors in March of 2024, goes to the weight of the evidence and creates a factual issue that should be evaluated and determined by the jury (see Brown v Achy, 9 AD3d at 33-34; Ocean v Hossain, 127 AD3d 402, 403 [1st Dept 2015]). In any event, a gap or cessation in treatment would only defeat plaintiff's claims of permanent consequential limitation of use, not his claims of significant limitations of use (see Bianchi v Mason, 179 AD3d 567, 568 [1st Dept 2020]).90/180 - DAY CLAIM
Defendants have the burden of coming forward with evidence that establishes as a matter of law that plaintiff cannot sustain this cause of action (see Correa v Saifuddin, 95 AD3d 407, 408 [1st Dept 2012]). Defendants' experts only address the 90/180 - day claim in affirmations attached to the reports that use the following language:
"I did not examine [plaintiff] in the first 6 months following the accident. However, in his records there is no objective evidence of any impairment that prevented him from performing substantially all of the material acts which constituted his usual and customary activities for any length of time during the 180 days following the accident. If this claim is made it would be solely on a subjective basis."
Plaintiff testified that he did not leave his bed or home for the first two weeks after the accident, and that he was initially confined to home for two to three months, only leaving to see his treating doctors or pick up his daughter from school once or twice a week. The medical records establish that by five weeks after the accident plaintiff had multiple appointments for treatment with medical providers. Defendants' experts failed to submit evidence to refute plaintiff's deposition testimony and the medical records on this issue. Accordingly, the burden never shifted to plaintiff to raise an issue of fact (see Steele v Santana, 125 AD3d 523, 524 [1st Dept 2015]; Silverman v MTA Bus Co.,101 AD3d 515, 517 [1st Dept 2012]). In any event, defendants abandoned this argument on appeal (see Skeete v Greyhound Lines, Inc., 209 AD3d 415, 417 [1st Dept 2022]).
I find that defendants have not met their prima facie burden, and to the extent defendants have met their burden, plaintiff has raised issues of fact as to whether he sustained a "serious injury" pursuant to Insurance Law §§ 5102(d) and 5104(a). Therefore, I dissent and I would affirm the motion court's decision.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: January 29, 2026 

Footnotes

Footnote 1: The dissent finds that Dr. Bazos's opinion that plaintiff's injuries were unrelated to the accident conflicts with his opinion that plaintiff had recovered from his accident-related injuries. What Dr. Bazos opined, however, was that the claimed injuries were unrelated to the accident, and that the minor soft-tissue injuries plaintiff could have sustained were resolved.